UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
    v.                             )    CR. No. 07-134 S
                                   )
SOUTHERN UNION COMPANY,            )
                                   )
         Defendant.                )
_____)

## **PRELIMINARY SENTENCING MEMORANDUM**

WILLIAM E. SMITH, United States District Judge.

This case has returned to the Court after making its way through the First Circuit Court of Appeals and the United States Supreme Court. A major part of the sentence imposed by this Court on Defendant Southern Union Company ("Southern Union") was vacated by the Supreme Court, and the case was remanded for re-sentencing. The parties have several important questions regarding how to resolve the defects the Supreme Court found in the initial sentence, and what sentence is permitted in light of the Supreme Court's opinion. (See United States' Mot. Concerning the Issues that Should Be Resolved on Remand, ECF No. 163.) This Memorandum answers those questions. Re-sentencing shall proceed in accordance with the holdings outlined below.

I. Background

On October 15, 2008, a jury convicted Defendant of knowingly storing waste without a permit in violation of 42

U.S.C. § 6928(d)(2) (the "Resource Conservation and Recovery Act" or "RCRA") from "on or about September 19, 2002 to October 19, 2004." (Jury Verdict, ECF No. 98.) The RCRA establishes a maximum penalty of $50,000 per day of violation. The probation office calculated a maximum fine of $38.1 million, on the basis that Southern Union had violated the RCRA for 762 days – each day from September 19, 2002 to October 19, 2004.

Defendant objected to the probation office's recommendation as a violation of Apprendi v. New Jersey, which holds that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. 466, 476 (2000) (internal citation and quotation marks omitted). Southern Union noted that each day that it violated the RCRA would lead to a greater maximum fine, so the duration of the violation was a fact that a jury must find beyond a reasonable doubt.

Southern Union argued that the jury's verdict was ambiguous with respect to the duration of the violation and only necessarily means that Defendant violated the RCRA for one day. (Mem. of Law with Respect to the Maximum Possible Sentencing Fine, ECF No. 134.) In addition to the language from the verdict form, the district court's instructions to the jury stated "[t]he proof need not establish with certainty the exact

2

date of the alleged offense. It is sufficient if the evidence in this case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged." (Tr. of Jury Trial Vol. 13 148:12-16, October 14, 2008, ECF No. 119.) According to Southern Union, the guilty verdict meant that the jury found at least a one-day violation of the RCRA, but the number of days beyond that was unclear. Therefore, in Southern Union's view, the maximum penalty supported by the verdict would be $50,000.

This Court disagreed with Southern Union's position and found that, while <u>Apprendi</u> likely applied to criminal fines, the verdict form was specific enough to say that the jury had found beyond a reasonable doubt that Southern Union had violated the RCRA for 762 days and the maximum fine was $38.1 million. <u>United States v. S. Union Co.</u>, Cr. No. 07–134 S, 2009 WL 2032097, at *3-4 (D.R.I. July 9, 2009). The Court then imposed a fine of $6 million and a community service obligation of $12 million.[1] (Judgment, ECF No. 147.)

---

[1] Of the community service obligation, $1 million was to be allotted in increments of $200,000 to the following: (1) the Rhode Island Chapter of the American Red Cross, exclusively to be used in Rhode Island; (2) the Rhode Island Department of Environmental Management Environmental Response Fund; (3) Hasbro Children's Hospital for the equipment and testing of children exposed to hazardous chemicals and waste; (4) Distressed Communities Recreation and Acquisition Fund to be used in Pawtucket, Rhode Island; and (5) the Pawtucket Fire Department for acquisition of materials to be used in response to hazardous

Southern Union appealed the sentence to the First Circuit Court of Appeals, which found that the jury did not determine the duration of the RCRA violation because no special interrogatory was submitted to the jury and a finding on the number of days was not necessary for the jury's conviction of Southern Union. United States v. S. Union Co., 630 F.3d 17, 36 (1st Cir. 2010). However, the First Circuit affirmed the sentence imposed because it found that Apprendi did not apply to criminal fines. Id. at 33-36. The Supreme Court granted certiorari and reversed the First Circuit, finding that Apprendi applies to criminal fines. S. Union Co. v. United States, 132 S. Ct. 2344, 2353 (2012).[2] The case was remanded to the First

---

chemical spills. The other $11 million of the community service obligation was to be used to endow a fund to be managed by the Rhode Island Foundation "for grants in the field of environmental education, environmental remediation, conservation and children's health issues related as much as possible to exposure to toxins, hazardous waste, and heavy metal hazardous waste." (Judgment, ECF No. 147.)

[2] The First Circuit's determination that the verdict did not support a finding that the RCRA was violated for more than one day was not challenged in the Supreme Court. Moreover, the government did not argue before the First Circuit that Southern Union had waived its right to challenge the verdict form by failing to object to it and failing to request a special interrogatory at trial, a point raised by Justice Kennedy at oral argument before the Supreme Court. Such a waiver argument would not likely have been successful. As discussed below, "[a] party's obligation to object to an erroneous jury instruction endures only to the extent that the instruction is inimical to his cause." United States v. Perez-Ruiz, 353 F.3d 1, 14 (1st Cir. 2003); see also United States v. Nelson-Rodriguez, 319 F.3d 12, 47 (1st Cir. 2003). This is an example of excellent

4

Circuit Court of Appeals, which vacated the fine and remanded the case to this Court for further proceedings consistent with the Supreme Court's opinion. (Order, ECF No. 162.)

Upon remand, the government argues that (1) the Court should empanel a second jury to determine the duration of the RCRA violation and impose a new fine in accordance with the jury's findings; (2) the Supreme Court's ruling did not affect the $12 million community service obligation imposed by this Court; and (3) if the Court finds that it cannot empanel a second jury and that the Supreme Court's decision vacated the $12 million community service obligation, the Court may fine Southern Union $500,000 under 18 U.S.C. § 3571(c) (the "Corporate Fine Statute"). These are close calls, but I have concluded that the Court may not empanel a second jury for sentencing and the Supreme Court's decision vacated the $12 million community service obligation. The Court may, however, impose a fine of $500,000 under the Corporate Fine Statute and/or a commensurate community service obligation.

---

tactical lawyering; Southern Union no doubt concluded that its chances were far better with a verdict form it could attack as not sufficiently specific and arguing for application of Apprendi at sentencing than letting the jury actually answer a special interrogatory where it knew the answer would be bad news. Because objecting to the jury instruction and verdict form would have been damaging to Southern Union, it was under no obligation to do so.

5

II. Empanelment of a Second Jury

The government requests that the Court empanel a second jury to determine the duration of the RCRA violation beyond a reasonable doubt. This suggestion must be rejected because the government had the opportunity to submit a special interrogatory or more precise verdict form during the initial trial and failed to do so; thus, the government waived its ability to request a jury finding on the precise number of days by not objecting to the jury instructions or verdict form that was submitted to the first jury.

Rule 51(b) of the Federal Rules of Criminal Procedure states that "[a] party may preserve a claim of error by informing the court – when the court ruling or order is made or sought – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). In the context of a jury charge and verdict form, "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). The First Circuit has held repeatedly that "[t]he failure to object to the structure of a verdict form before the jury retires, like the failure to object to any other portion of the judge's charge, constitutes a

6

waiver." Scott-Harris v. City of Fall River, 134 F.3d 427, 435 (1st Cir. 1997), rev'd on other grounds, Bogan v. Scott-Harris, 523 U.S. 44 (1998); see also Petsch-Schmid v. Boston Edison Co., No. 96-1399, 1997 WL 100904, at *1 (1st Cir. Feb. 27, 1997) ("[T]he failure to object before the jury retires to the charge or the verdict form constitutes a waiver.").

A waiver is the "intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). The government argues that the necessity of a more specific verdict was not "known" because the attorneys representing the government did not know that Apprendi applies to criminal fines because the Supreme Court had not so held until this case. However, the available case law and the government's official position on the issue at the time the instructions and verdict form were submitted to the jury both indicated that Apprendi did, in fact, apply to fines. See United States v. LaGrou Distribution Sys., Inc., 466 F.3d 585, 594 (7th Cir. 2006). In LaGrou, the trial court imposed a fine of double the maximum statutory penalty that was supported by the jury's verdict. Upon appeal, the government conceded that Apprendi applies to criminal fines, and therefore, the sentence was unlawful. See Brief and Appeal of the United States at 34 (Dec. 20, 2005), filed in LaGrou, 466 F.3d 585 ("Apprendi does apply to monetary

7

fines, that is, any fact increasing the maximum fine above the prescribed statutory maximum must be proven beyond a reasonable doubt."). The government noted in its brief that this concession was made in consultation with the Office of the Solicitor General. Id. at 34 n.12. The Seventh Circuit agreed, holding that the imposition of the fine that exceeded the statutory maximum without a jury finding the necessary facts was a reversible error. LaGrou, 466 F.3d at 594. The government's concession in LaGrou and the subsequent Seventh Circuit opinion meant that the government officially "knew" that Apprendi applies to fines and, by failing to object to the initial jury instructions and verdict form, it waived its ability to submit new instructions and verdict form to a jury now.[3]

The government argues that the individual attorneys representing the government in this case did not know that the jury instructions and verdict form created Apprendi issues, so they did not knowingly waive the right to later revise those instructions. However, the government conceded at oral argument

---

[3] The fact that the government argued to the contrary, and prevailed, at the First Circuit does not alter this conclusion. After the jury was charged in this case, but before the case was appealed to the First Circuit, the Supreme Court decided Oregon v. Ice, 555 U.S. 160 (2009). Both the government and the First Circuit misinterpreted Ice to mean that Apprendi does not apply to fines. Regardless, the relevant question for this Court is what the government's position was, and what the available case law held, at the time the jury was instructed. The government must live with the consequences of changing its position.

in this case that the government "speaks with one voice." (Tr. Oral Argument, Dec. 3, 2012, 6:22-7:1, ECF No. 169); see also United States v. Millan, 817 F. Supp. 1072, 1086 n.11 (S.D.N.Y. 1993) ("[T]he government speaks with one voice and is responsible for letting the right hand know what the left hand is doing."). Additionally, the government's position is unworkable because it would allow a party to avoid a waiver simply by asserting the ignorance of its attorneys. Therefore, knowledge of the government's concession in LaGrou must be imputed to the government's attorneys in this case, and the government waived its right to submit revised jury instructions or a special interrogatory to a second jury.

The government asserts that it had no responsibility to object to the jury instruction and request a more specific verdict form because such revisions would be designed to protect Southern Union's Sixth Amendment rights and it has no responsibility to object to protect Southern Union's rights. This argument, too, fails because objections such as this are not only made to protect a party's constitutional rights – they are also made to preserve the government's ability to pursue and prevail in the case it has brought against a defendant. For example, there is a requirement that a jury be instructed on each of the elements of a crime; this is, of course, designed to preserve a criminal defendant's constitutional right to have a

jury find all of the elements of a crime beyond a reasonable doubt. See Sandstrom v. Montana, 442 U.S. 510, 524 (1979). But, the government will object to a faulty jury instruction in order to prevent the case from being dismissed, and, if it fails to do so, it waives its ability to correct the errant jury instruction later. See United States v. Taylor, 54 F.3d 967, 976 (1st Cir. 1995) (discussing the "raise-or-waive" rule). In this case, the government bore the responsibility to object to the faulty jury instruction if it wished to preserve its ability to pursue a more significant penalty against Southern Union.

The First Circuit has placed the burden to object to faulty jury instructions before they are submitted to the jury squarely on the shoulders of the government. In United States v. Nelson-Rodriguez, 319 F.3d 12, 47 (1st Cir. 2003), the jury instructions and verdict form did not ask the jury to determine drug type and quantity in connection with charges for possession with intent to distribute controlled substances. The defendant argued that any sentence in excess of the default statutory maximum based on distribution of less than fifty kilograms of marijuana was not supported by the jury's verdict. The court discussed the timing of objections to jury instructions that do not support a sentence above a default maximum, stating:

> The defendant . . . has no interest in being sentenced above the maximum and no incentive to request that the jury specifically determine those facts which would

10

> carry him above that level. The government, on the other hand, does have an interest in going above the maximum, so it should bear the burden of requesting submission of the issue to the jury. Further, a defendant will not know whether there is an Apprendi error until sentencing, and then only if the court considers a sentence above the maximum. An objection from defendant at the point of sentencing will be timely.

Id. (emphasis added). Thus, even though Apprendi protects the defendant's Sixth Amendment right, the government bears the obligation to request the jury instruction necessary to support the penalty it seeks. By not requesting an adequate jury instruction and special interrogatory prior to the jury charge, the government waived its ability to do so now.

Because the government waived its ability to submit a revised instruction and special interrogatory to a jury, it is not necessary to reach the issue of whether the empanelment of a second jury for this purpose would violate Southern Union's Fifth Amendment protection against double jeopardy.

III. The Community Service Obligation

The Supreme Court's holding left open the question of what should become of the $12 million community service obligation. The parties vigorously debate the question and, while the conclusion here is not free from doubt, I find that the community service obligation has been effectively vacated by the Supreme Court's decision. Although the community service obligation is not merely a fine by another name, as Southern

11

Union contends, it is confined by the statutory maximum supported by the jury's verdict. Because the payment imposed by this Court exceeded that maximum, it must be vacated.

Criminal fines against corporations are prescribed by the Corporate Fine Statute, which states, in relevant part, that

> an organization that has been found guilty of an offense may be fined not more than the greatest of--
>
> > (1) the amount specified in the law setting forth the offense; [or]
> >
> > . . . .
> >
> > (3) for a felony, not more than $500,000.

18 U.S.C. § 3571(c). Therefore, the maximum fine that may be imposed on Southern Union is $500,000 or the maximum supported by the jury's verdict.

The government argues that the community service obligation was imposed as a condition of Southern Union's probation under 18 U.S.C. § 3563(b) (Conditions of Probation) (the "Probation Statute"), rather than as a "fine," so the penalty is not subject to the maximums of the Corporate Fine Statute.[4] The Probation Statute grants courts the discretion to require defendants, as a condition of probation, to "work in community service as directed by the court." Id. § 3563(b)(12).

---

[4] In a footnote, Southern Union summarily "questions" whether a payment to a charity is a permissible condition of probation. (Obj. of Southern Union to the Gov't's Mot. Concerning the Issues that Should Be Resolved on Remand 23 n.15, ECF No. 165.) The Court need not reach this argument here.

12

Additionally, 18 U.S.C. § 3563(b)(22) allows courts to require defendants to "satisfy such other conditions [of probation] as the court may impose." The conditions of probation are left to the discretion of the sentencing judge, and this discretion allows judges to impose sentences of indeterminate length that are not subject to statutory maximums. Therefore, the government argues that there can be no Apprendi issues with the imposition of penalties under the Probation Statute.

This argument is powerful, but courts have consistently held that the combination of the fine imposed under the statute setting forth the offense and any conditions of probation cannot exceed the statutory maximum penalty. See., e.g., United States v. Interstate Cigar Co., 801 F.2d 555, 556 (1st Cir. 1986) ("[T]he mail fraud statute says that a convicted person 'shall be fined not more than $1000 or imprisoned not more than five years, or both.' . . . Hence, . . . the statute suggests that the maximum penalty against a corporation that commits mail fraud cannot amount to more than a $1000 fine."); Fiore v. United States, 696 F.2d 205, 209-10 (2d Cir. 1982) ("Though the statute allows that the defendant may, as a condition of probation, be required to pay 'a' fine, it would not be proper to read this as an implicit waiver of the statutory maximum fines set by Congress."); United States v. Mitsubishi Int'l Corp., 677 F.2d 785, 788 (9th Cir. 1982) (stating that the

13

discretion of the sentencing judge is limited by "the recognition that the statutorily prescribed maximum sentence cannot be increased by the terms of probation"); United States v. Atl. Richfield Co., 465 F.2d 58, 61 (7th Cir. 1972) ("It is evident, however, that the conditions imposed by a court in connection with the suspension of sentence may not, at least if objected to by the defendant, exceed the maximum penalty authorized by Congress."); United States v. CITGO Petroleum Corp., Criminal Action No. C-06-563, 2012 WL 4127800, at *4 (S.D. Tex. Sept. 18, 2012) ("In sum, any imposition of a sentence of probation that requires [the defendant] to pay the equivalent of a monetary penalty in excess of the maximum monetary penalty prescribed for its convictions is illegal." (internal citations omitted)).

The government argues that these cases are not good law because they either (1) are based on an outdated version of the Probation Statute or (2) rely on cases that are based on an outdated version of the Probation Statute. The Probation Statute was revised, effective November 1, 1987, to provide a more expansive list of the types of probation conditions that may be imposed by sentencing courts. Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987. The government asserts that this expanded list permits courts to impose monetary penalties that were not previously at its disposal, so the prior

14

cases limiting monetary penalties to the statutory maximum fine no longer have any effect.

However, the revisions to the Probation Statute were not designed to expand the types of penalties that were available to sentencing courts. The prior version of the Probation Statute granted a sentencing court the freedom to impose "such terms and conditions as [it] deems best." 18 U.S.C. § 3651 [repealed]. Indeed, most of the conditions listed in the revised statute were, in fact, imposed under the prior law. See S. Rep. No. 98-225, at 94-95 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3277-78 ("Sentencing Reform Act Cong. Report"). The revised statute, like the prior version, is merely a "suggested listing of some of the available alternatives" that a court may impose as conditions of probation. Id. Because neither the prior nor the current versions of the Probation Statute contained an exclusive list of available conditions of probation, the new statute did not serve to expand the universe of available conditions of probation.

Yet even if the revisions to the Probation Statute did serve to expand the types of penalties that courts may impose as conditions of probation, that does not mean that the Court may impose a greater monetary penalty than it could have done previously. The amendment does not undermine the "controlling [axiom] of criminal jurisprudence . . . that courts may not

sentence a defendant to a term or in an amount which exceeds the maximum penalty established by the legislature." Fiore, 696 F.2d at 210. Moreover, this holding is consistent with my approach to the sentence in the first instance: I concluded that the RCRA permitted a maximum fine of $38.1 million in this case, and stated that I had no intention of imposing a penalty that exceeded that amount, even including the community service obligation.

Because the combination of a fine and the conditions of probation may not exceed the statutory maximum penalty, Apprendi limits the monetary value of a community service obligation to the amount that can be supported by the jury's verdict. Therefore, the $12 million community service obligation imposed on Southern Union must be considered vacated by the Supreme Court's remand, and may not be re-imposed.

The government also argues in the alternative that the community service obligation amounted to restitution, which is not subject to the Apprendi requirement that all facts supporting the penalty must be found by a jury. See United States v. Bonner, 522 F.3d 804, 806-07 (7th Cir. 2008) (noting that courts have repeatedly held that the protection set forth in Apprendi does not apply to restitution); LaGrou, 466 F.3d at 593 ("We reiterate: restitution is not a penalty for a crime for Apprendi purposes since restitution for harm done is a

16

classic civil remedy that is administered for convenience by the courts that have entered criminal convictions." (internal citation and quotation marks omitted)); United States v. Milkiewicz, 470 F.3d 390, 404 (1st Cir. 2006) (holding that a judge, rather than a jury, may determine the amount of restitution because the penalty is the full amount of loss and leaves little to the discretion of the judge); United States v. Ziskind, 471 F.3d 266 (1st Cir. 2006) (same). Restitution generally consists of the "full amount of loss" suffered by victims of crimes. United States v. Leahy, 438 F.3d 328, 337-38 (3d Cir. 2006). In this case, no victims suffered any loss as a result of Southern Union's crime because Southern Union remedied any damage and conducted all necessary contamination testing at its own expense. This Court noted at sentencing that it did not see restitution "to be a factor at all in this case." (Sentencing Tr. 54:14-20, Oct. 2, 2009, ECF No. 152.) Therefore, the $12 million penalty does not amount to restitution and may not exceed the statutory maximum penalty supported by the jury's verdict.

IV. Alternative Fine

As noted above, under 18 U.S.C. § 3571, an organization that has been convicted of a felony may be fined the greater of $500,000 or the amount specified in the applicable criminal statute. Southern Union argues that if the "aggregate maximum

potential fine" authorized under a statute exceeds $500,000, then the amount specified by that law is the greater penalty and the alternate fine is not available. Southern Union argues that the "aggregate maximum potential fine" under the RCRA is limitless, as the possible duration of a violation is limitless, so the $500,000 alternate penalty would not apply in this case. Southern Union, not surprisingly, provides no case law to support its reading of the Corporate Fine Statute, and its reading is inconsistent with the statute's plain language. The jury's verdict can support a fine for only a single day violation of the RCRA, so the penalty specified in the RCRA in this case is $50,000. Because $500,000 is greater than the penalty available under the RCRA, a fine of $500,000 is available to this Court at the re-sentencing of Southern Union.

V. Conclusion

While the Court believes that the result reached in this Memorandum is called for by the law, this result is manifestly unsatisfactory and even unjust. Southern Union was found guilty by a jury of a crime that Congress has determined to be serious enough to carry a penalty of $50,000 per day of violation. Southern Union committed this crime for the bulk of a 762 day period, yet could escape with a penalty of only $500,000. For a company with over $9.9 billion in total assets, as of December

18

31, 2012,[5] that long ago packed up and left Rhode Island and New England, such a penalty would serve none of the statutory goals of sentencing criminal defendants – it is not an adequate penalty to punish Southern Union for its conduct, nor will it deter Southern Union or other similarly situated companies from similar actions in the future. See 18 U.S.C. § 3553 ("Section 3553"); Sentencing Reform Act Cong. Report at 3258-59.

Further, this result deprives the Court of its critical role in sentencing criminal defendants. Section 3553 and United States v. Booker, 543 U.S. 220 (2005), serve to empower the court with the ability to impose what it determines to be a just sentence. Section 3553 requires courts to determine a sentence that is "sufficient, but not greater than necessary" to promote the purposes of sentencing enumerated by Congress. 18 U.S.C. § 3553(a). In doing so, the court is directed to consider the nature of the offense committed and the characteristics of the particular defendant. 18 U.S.S. § 3553(a)(1). The judge may also consider circumstances or factors that are not incorporated into the sentencing guidelines when determining an appropriate sentence. Sentencing Reform Act Cong. Report at 3258.

Section 3553 and Booker confer on the court great discretion to determine what type of sentence best furthers the

---

[5] Southern Union Co., Annual Report (Form 10-K) (March 1, 2013).

policy goals enumerated in Section 3553.  Emphasizing that "the words 'the court' mean 'the judge without the jury,' not 'the judge working together with the jury,'" the Booker Court re-affirmed that the court, alone, determines what is a just sentence, and it is not merely an instrument that mechanistically imposes sentences that are determined by the jury's verdict.  Booker, 543 U.S. at 249-50.

With these principles in mind, I have concluded that a sentence comprised of primarily "community service," in that term's broadest connotation, is the best I can do in a bad situation to craft an appropriate sentence.  Therefore, I am inviting the parties, and the greater environmental community, to suggest community service obligations that I could impose upon Southern Union which would have the broadest possible impact.  The dollar value of such an obligation must, in the aggregate, not exceed $500,000.  The Court will allow 90 days from the date of this Memorandum for proposals and will schedule sentencing once proposals are received.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  April 25, 2013